David J. DiSabato (*Pro Hac Vice* to be filed)
Lisa R. Considine (*Pro Hac Vice* to be filed)
Oren Faircloth (*Pro Hac Vice* to be filed)
**SIRI & GLIMSTAD LLP**
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: ddisabato@sirillp.com
Email: lconsidine@sirillp.com
Email: ofaircloth@sirillp.com

*Attorneys for Plaintiffs and the Proposed Class and Subclasses*

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY PETERSON, ASHLEY SCARBOROUGH, DALEENE FOX, PORSCHE HOLMES, LAURA SMITH, SHARON CROSSWHITE, SARAH FRAZEE, KELLY SLOVENKAY, OLIVER TSUYA, and KATRINA ERICKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs Timothy Peterson, Ashley Scarborough, Daleene Fox, Porsche Holmes, Laura Smith, Sharon Crosswhite, Sarah Frazee, Kelly Slovenkay, Oliver Tsuya, and Katrina Erickson, ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated individuals, upon personal knowledge as to themselves and their own acts, and upon information and belief as

1

to all other matters, brings this Class Action Complaint against Defendant Amazon.com, Inc. ("Amazon" or "Defendant") in connection with Amazon's recent unilateral imposition of new fees for previously commercial-free video streaming services that were unfairly foisted upon existing Amazon Prime subscribers.

## NATURE OF THE ACTION

1.     Originally launched in the United States in 2006, Amazon Prime (then called Amazon Unbox), is a subscription-based service that, for a monthly or yearly fee, provides subscribers access to video content on-demand, among other things.  The service, now called Prime Video, has, since 2011, provided commercial-free video content, deriving its revenue primarily from its subscription base, which as of 2022 numbered in excess of 200 million users.

2.     In January 2024, Amazon introduced advertisements to its previously commercial-free content.  In connection with that change, subscribers were required to pay a fee of $2.99 per month in order to avoid the commercials.

3.     For those annual subscribers like Plaintiffs, the imposition of a $2.99 monthly fee to enjoy a commercial-free viewing experience — a benefit that they had already paid for in their annual subscriptions — not only constitutes a breach of contract by Amazon, but also a violation of the Washington Consumer Protection Act (the "CPA"), RCW Chapter 19.86, as well as of the Unfair and Deceptive Acts and Practices statutes of virtually every other state in the country.

## PARTIES

4.     Plaintiff Timothy Peterson lives, and has lived throughout the applicable limitations period, in Timnath, Colorado. He maintained an Amazon Prime subscription throughout the relevant period, paying the annual fee for commercial-free movie and television streaming.

5.      Plaintiff Ashley Scarborough lives, and has lived throughout the applicable limitations period, in Honolulu, Hawaii. She maintained an Amazon Prime subscription throughout the relevant period, paying the annual fee for commercial-free movie and television streaming.

6.      Plaintiff Daleene Fox lives, and has lived throughout the applicable limitations period, in Lewiston, Idaho. She maintained an Amazon Prime subscription throughout the relevant period, paying the annual fee for commercial-free movie and television streaming.

7.      Plaintiff Porsche Holmes lives, and has lived throughout the applicable limitations period, in Champaign, Illinois. She maintained an Amazon Prime subscription throughout the relevant period, paying the annual fee for commercial-free movie and television streaming.

8.      Plaintiff Laura Smith lives, and has lived throughout the applicable limitations period, in Basehor, Kansas. She maintained an Amazon Prime subscription throughout the relevant period, paying the annual fee for commercial-free movie and television streaming.

9.      Plaintiff Sharon Crosswhite lives, and has lived throughout the applicable limitations period, in Moberly, Missouri. She maintained an Amazon Prime subscription throughout the relevant period, paying the annual fee for commercial-free movie and television streaming.

10.      Plaintiff Sarah Frazee lives, and has lived throughout the applicable limitations period, in New Jersey. She maintained an Amazon Prime subscription throughout the relevant period, paying the annual fee for commercial-free movie and television streaming.

11.      Plaintiff Kelly Slovenkay lives, and has lived throughout the applicable limitations period, in Mentor, Ohio. She maintained an Amazon Prime subscription throughout the relevant period, paying the annual fee for commercial-free movie and television streaming.

12.     Plaintiff Oliver Tsuya lives, and has lived throughout the applicable limitations period, in Park City, Utah. He maintained an Amazon Prime subscription throughout the relevant period, paying the annual fee for commercial-free movie and television streaming.

13.     Plaintiff Katrina Erickson lives, and has lived throughout the applicable limitations period, in Naselle, Washington. She maintained an Amazon Prime subscription throughout the relevant period, paying the annual fee for commercial-free movie and television streaming.

14.     Defendant Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington. Amazon is one of the world's largest online retailers and offers a variety of e-commerce services. Amazon offers paid subscription services known as "Amazon Prime," which includes digital streaming of television shows and movies through Prime Video.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2).  The amount in controversy exceeds $5,000,000, and this matter is a class action in which one or more putative class members is a citizen of a state different than the state in which Defendant is domiciled.

16.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in the State of Washington, and conducts business herein.

17.     Venue is proper in this Court because Amazon resides in this District, having its headquarters and principal place of business in Seattle, Washington, and because Amazon's "Conditions of Use" require that all disputes relating in any way to the use of Amazon's services shall be adjudicated in the state or Federal courts of King County, Washington, which shall be the exclusive venue for all such disputes.

## FACTUAL ALLEGATIONS

18.     Since inception, Amazon Prime has offered "unlimited, commercial-free, instant streaming" of its vast video content.

19.     Many consumers, like Plaintiffs, regularly decided to subscribe to or keep their annual membership in part because of the commercial-free feature of Prime Video.

20.     Many of Defendant's streaming competitors have introduced commercials to their platforms, giving Defendant's annual commercial-free subscription a competitive advantage.

21.     The contracts entered into by Plaintiffs with Defendant were annual subscriptions that last for 12 months. The fees are paid in full up-front, with no change possible until the end of the term. During the full term, Defendant is obligated to provide, among other commercial-free video streaming service.

22.     Amazon has never increased subscription fees during the term of an annual subscription membership.

23.     On January 29, 2024, Amazon unilaterally included commercials in the streaming services provided to Plaintiffs, and unilaterally imposed a new fee of $2.99 per month if Plaintiffs wanted to enjoy the same commercial-free service that they had previously paid for in their annual subscription fee.

24.     Plaintiffs do not want to watch commercials on Amazon. They each paid for commercial-free streaming for an uninterrupted one-year term, which Defendant has now robbed them of.

## PLAINTIFF SPECIFIC FACTS

25.     Timothy Peterson is a long-standing Amazon Prime subscriber living in Colorado and has consistently renewed his annual membership each July 21 with the expectation of access to commercial-free content. This core benefit was a key factor in his decision to choose a premium service and was abruptly undermined in late January 2024. Mr. Peterson began seeing advertisements while streaming, despite having already paid the annual subscription fee.

26.     Ashley Scarborough has been a long-time Amazon Prime subscriber living in Hawaii, who has consistently renewed her annual membership on or around March 28 each year. She paid for her annual subscription in large part because it provided commercial free viewing of Prime Video content. Ms. Scarborough began seeing advertisements while streaming, despite having already paid the annual subscription fee.

27.     Daleene Fox has been a long-time Amazon Prime subscriber living in Idaho, who has consistently renewed her annual membership on or around January 16 each year. She paid for her annual subscription in large part because it provided commercial free viewing of Prime Video content. Ms. Fox began seeing advertisements while streaming, despite having already paid the annual subscription fee.

28.     Porsche Holmes has been a long-time Amazon Prime subscriber living in Illinois, who has consistently renewed her annual membership on or around July 3 each year. She paid for her annual subscription in large part because it provided commercial free viewing of Prime Video content. Ms. Holmes began seeing advertisements while streaming, despite having already paid the annual subscription fee.

29.     Laura Smith has been a long-time Amazon Prime subscriber living in Kansas, who has consistently renewed her annual membership on or around January 27 each year. She paid for

her annual subscription in large part because it provided commercial free viewing of Prime Video content. Ms. Smith began seeing advertisements while streaming, despite having already paid the annual subscription fee.

30.     Sharon Crosswhite has been a long-time Amazon Prime subscriber living in Missouri, who has consistently renewed her annual membership on or around April 20 each year. She paid for her annual subscription in large part because it provided commercial free viewing of Prime Video content. Ms. Crosswhite began seeing advertisements while streaming, despite having already paid the annual subscription fee.

31.     Sarah Frazee has been a long-time Amazon Prime subscriber living in New Jersey, who has consistently renewed her annual membership on or around January 21 each year.  She paid for her annual subscription in large part because it provided commercial free viewing of Prime Video content. Ms. Frazee began seeing advertisements while streaming, despite having already paid the annual subscription fee.

32.     Kelly Slovenkay has been a long-time Amazon Prime subscriber living in Ohio, who has consistently renewed her annual membership on or around June 21 each year.  She paid for her annual subscription in large part because it provided commercial free viewing of Prime Video content. Ms. Slovenkay began seeing advertisements while streaming, despite having already paid the annual subscription fee.

33.     Oliver Tsuya has been a long-time Amazon Prime subscriber living in Utah, who has consistently renewed his annual membership on or around January 24 each year. He paid for his annual subscription in large part because it provided commercial free viewing of Prime Video content. Mr. Tsuya began seeing advertisements while streaming, despite having already paid the annual subscription fee.

34.     Katrina Erickson has been a long-time Amazon Prime subscriber living in Washington, who has consistently renewed her annual membership each year. She paid for her annual subscription in large part because it provided commercial free viewing of Prime Video content. Ms. Erickson began seeing advertisements while streaming, despite having already paid the annual subscription fee.

## CLASS DEFINITION AND ALLEGATIONS

35.     Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated.

36.     Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

**Nationwide Class** (the "**Class**")
All persons who had an active annual subscription to Amazon Prime as of December 28, 2023, while residing in the United States.

**Colorado State Class** (the "**Colorado Subclass**")
All persons residing in Colorado who had an active annual subscription to Amazon Prime as of December 28, 2023.

**Hawaii State Class** (the "**Hawaii Subclass**")
All persons residing in Hawaii who had an active annual subscription to Amazon Prime as of December 28, 2023.

**Idaho State Class** (the "**Idaho Subclass**")
All persons residing in Idaho who had an active annual subscription to Amazon Prime as of December 28, 2023.

**Illinois State Class** (the "**Illinois Subclass**")
All persons residing in Illinois who had an active annual subscription to Amazon Prime as of December 28, 2023.

**Kansas State Class** (the "**Kansas Subclass**")
All persons residing in Kansas who had an active annual subscription to Amazon Prime as of December 28, 2023.

**Missouri State Class** (the "**Missouri Subclass**")
All persons residing in Missouri who had an active annual subscription to Amazon Prime as of December 28, 2023.

**New Jersey State Class** (the "**New Jersey Subclass**")
All persons residing in Missouri who had an active annual subscription to Amazon Prime as of December 28, 2023.

**Ohio State Class** (the "**Ohio Subclass**")
All persons residing in Ohio who had an active annual subscription to Amazon Prime as of December 28, 2023.

**Utah State Class** (the "**Utah Subclass**")
All persons residing in Utah who had an active annual subscription to Amazon Prime as of December 28, 2023.

37.     Excluded from the Class and Subclasses are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

38.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Class and Subclasses before the Court determines whether certification is appropriate.

39.     The proposed Class and Subclasses meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

40.     **Numerosity**.  This action is appropriately suited for a class action. The members of the Class and Subclasses are so numerous that the joinder of all members is impracticable.  Upon information and belief, each proposed Class and Subclass contains at least 100, and likely thousands of Prime Members who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

41.     **Commonality.**  This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a.  Whether Amazon disseminated false and misleading advertising regarding ad-free Prime Video services;

b.  Whether Defendant's use of misleading advertising regarding its ad-free Prime Video services was unfair and/or deceptive;

c.  Whether Amazon's imposition of advertisements, or alternatively a fee of $2.99 to avoid advertisements, is a breach of contract;

d.  Whether Defendant was and continues to be unjustly enriched through the unfair and deceptive actions alleged herein,

e.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 *et seq*;

f.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Hawaii's Unfair or Deceptive Acts or Practices law, Haw. Rev. Stat. §§ 480-1 *et seq*;

g.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Idaho's Consumer Protection Act, Idaho Code Ann §§ 48-603(1) *et seq*;

h.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505/1, *et seq*;

i.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Kansas' Consumer Protection Act, Kan. Sta. Ann. §§ 50-623 *et seq*;

j.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq*;

k.  Whether Defendant's conduct, as alleged herein, constitutes a violation of New Jersey's Consumer Fraud Act, N.J.S.A. §§ 56:8-1 *et seq*;

l.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.01–13 *et seq*;

m.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Utah's Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 *et seq*;

n.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Washington's Consumer Protection Act, Wash. Rev. Code §§ 19.86.010 *et seq*;

o.  The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

p.  Whether Plaintiffs and the Class and Subclasses are entitled to declaratory and injunctive relief and the nature of that relief.

42.  **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class and Subclasses, because, inter alia, all Class and Subclass members have been injured through the uniform misconduct described above and paid for Amazon Prime, a service that was supposed to be commercial-free and which did not deliver the advertised benefits. Moreover, Plaintiffs' claims are typical of the Class and Subclass members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and respective Subclasses. Plaintiffs would only seek individual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Subclasses.

43.  **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class and Subclasses. Plaintiffs and the Class and Subclasses each maintained an account with Defendant and were harmed by Defendant's misconduct in that they were promised and agreed to one service and ended up receiving a lesser service and, therefore, receiving less than the full value of their bargain. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class or Subclasses, and Defendant has no defenses unique to Plaintiffs.

44.  **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual

Class and Subclass members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or one of the Subclasses, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

45.     Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class and Subclasses, and other equitable relief on grounds generally applicable to the entire Class and the Subclasses, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class and Subclasses are certified, Defendant will be allowed to profit from its unfair and deceptive practices, while Plaintiffs and the members of the Class and Subclasses suffer damages. Unless a Class-wide injunction is issued, Defendant may continue to commit the violations alleged, and the members of the Class and Subclasses and the general public may continue to be unfairly treated.

46.     Defendant has acted and refused to act on grounds generally applicable to the Class and the Subclasses, making final injunctive relief appropriate with respect to the Class as a whole.

**COUNT ONE**
**BREACH OF CONTRACT**
**(All Plaintiffs individually and on behalf of the Nationwide Class)**

47.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1–46 above, as if fully set forth herein.

48.     Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class as defined above.

49.     Each Plaintiff entered into a contract with Defendant under which Defendant was to provide, among other things, commercial-free access to Prime Video, through annual subscriptions of Amazon Prime.

50.     Plaintiffs each paid good and valuable consideration to Defendant, as represented by the (2023) annual subscription cost of $139.

51.     Pursuant to the terms of the contract, Defendant agreed to provide commercial-free access to the movies and shows offered via streaming on Defendant's Prime Video service.

52.     Plaintiffs each have not breached the contract, having fulfilled all of their obligations under the contract, including making payment of $139.

53.     Defendant has not reserved any rights to unilaterally change the cost of an annual subscription during the term of the subscription.

54.     Defendant breached the contract by charging Plaintiffs an additional $2.99 per month in order to enjoy the commercial-free service that was already provided under their annual subscriptions, and for which Plaintiffs had already paid.

55.     As a result of Defendant's breach of the contract, Plaintiffs and all others similarly situated suffered damages in an amount to be determined by the Court.

## COUNT TWO
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
**(All Plaintiffs individually and on behalf of the Nationwide Class)**

56.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1–55 above, as if fully set forth herein.

57.     Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class as defined above.

58.     The implied duty of good faith and fair dealing is implied in every contract.

59.     Plaintiffs each entered into a contract with Defendant under which they purchased a commercial-free annual subscription to Amazon Prime.  Explicit and implicit in the agreement was the fact that the annual subscription would remain commercial-free for the full term of the subscription.

60.     Plaintiffs each paid $139 to Defendant up-front for their commercial-free annual subscriptions.

61.     In January of 2024, Defendant unilaterally increased the cost of Plaintiffs' commercial-free subscriptions by $2.99 per month, for the same commercial-free service that Plaintiffs already had under their existing annual subscriptions.

62.     Defendant's unilateral $2.99 per month increase was implemented without regard for the existing terms of the millions of commercial-free annual subscriptions that were active at the time of the increase.

63.     Defendant's unilateral $2.99 per month increase violates Defendant's duty of good faith and fair dealing by depriving Plaintiffs of the benefit of the bargain of their original commercial-free annual subscriptions, and leaving Plaintiffs with no reasonable choice.

64.     Plaintiffs have not breached the contract, having fulfilled all of their obligations under the contract, including making payment of $139 for their annual subscriptions, and have not otherwise breached any of their duties — implied or contractual — under the contract.

65.     As a result of Defendant's breach of the duty of good faith and fair dealing, Plaintiffs and all others similarly situated suffered damages in an amount to be determined by the Court.

<u>**COUNT THREE**</u>
**VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT,**
**Wash. Rev. Code §§ 19.86.010 *et seq*, ("CPA")**
**(All Plaintiffs individually and on behalf of the Nationwide Class)**

66.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–65 above, as if fully set forth herein.

67.     Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class as defined above.

68.     In order to state a claim under the CPA, a plaintiff must allege five elements: "(1) an unfair or deceptive act or practice that (2) affects trade or commerce and (3) impacts the public interest, and (4) the plaintiff sustained damage to business or property that was (5) caused by the unfair or deceptive act or practice." *Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 349–50 (2019).

69.     Defendant engaged in unfair business acts, false advertising, and misrepresentation by selling Amazon Prime subscriptions based on false and misleading information offering a commercial-free experience. Defendant's advertisements for commercial-free content contained demonstrably untrue and misleading statements regarding the benefits of a Prime subscription, specifically the inclusion of commercial-free content on Prime Video. These actions constitute unfair methods of competition and/or unfair or deceptive acts or practices under CPA.

70.     Defendant's deceptive practices and misrepresentations, as alleged herein, resulted in significant harm to Plaintiffs and the Nationwide Class and impacts thousands, if not millions, of consumers throughout Washington and the country, and is therefore consumer oriented. Defendant's actions resulted in significant harm to Plaintiffs and the Nationwide Class. They were told they did not need to pay extra for commercial-free service and were induced to pay for Amazon Prime, a service that did not deliver the advertised benefits, which violated their legitimate expectation of receiving the full value of their subscription, as promised by Defendant. Furthermore, Defendant's conduct offers no public benefit. There is no justification for misrepresenting the features of a service.

71.     The harm suffered by Plaintiffs and the Nationwide Class is not offset by any countervailing advantages for consumers or competition aside from increasing Defendant's bottom line by inducing customers to pay for a service they thought they had already paid for. In fact, such deceptive practices undermine healthy competition and ultimately disadvantage consumers.

72.     Defendant engaged in deceptive marketing that caused consumers like Plaintiffs and the Nationwide Class to rely on the marketing when enrolling and reenrolling in their Prime memberships. Defendant's advertisements promoting their Prime services falsely promised ad-free access to television programs and movies on Prime Video. These representations were demonstrably inaccurate and constituted a material misrepresentation of the service's features.

73.     Defendant's misleading advertisements led to consumer deception. The misleading nature of Defendant's statements was likely to deceive, and in fact did deceive, Plaintiffs and the Nationwide Class, which is composed of reasonable consumers that were likewise deceived by the misleading advertisements. Reasonable consumers like Plaintiffs, exercising ordinary care, would

and did rely on such material representations when making a decision to purchase a commercial-free annual subscription.

74.     Defendant either knew or should have known through the exercise of reasonable care that their statements regarding a commercial-free service were false and misleading.

75.     The unilateral addition of mandatory commercials and the unilateral imposition of a new $2.99 monthly fee to maintain the commercial-free experience was an unfair act or practice. These changes alter the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

76.     Plaintiff and the Nationwide Class suffered damages in the amount of $2.99 per month as a result of the foregoing conduct.  Plaintiff and the Nationwide Class are entitled to actual damages, treble damages, attorneys' fees and costs of suit, and all available relief.

### COUNT FOUR
**VIOLATION OF COLORADO'S CONSUMER PROTECTION ACT ("CCPA"),**
**Colo. Rev. Stat. §§ 6-1-101 et *seq.***
**(Plaintiff Timothy Peterson on behalf of himself and the Colorado Subclass)**

77.     Plaintiff Timothy Peterson repeats and realleges each and every allegation set forth in paragraphs 1–76 above, as if fully set forth herein.

78.     Plaintiff Peterson brings this cause of action on behalf of himself and the members of the Colorado Subclass.

79.     Upon subscribing and renewing his Prime membership each year, Plaintiff Peterson reasonably believed the subscription fees covered unlimited, ad-free streaming of movies and TV shows. He fulfilled his contractual obligation by paying the subscription fee. However, after paying the subscription fee, additional monthly fees of $2.99 were required to access ad-free content.

80.     To prevail on a Colorado Consumer Protection Act claim, a party must prove five elements: (1) the party engaged in an unfair or deceptive trade practice, (2) the challenged practice occurred in the course of the party's business, vocation, or occupation, (3) the challenged practice significantly impacted the public as actual or potential consumers of the party's goods, services, or property, (4) the claiming party suffered injury in fact to a legally protected interest, and (5) the challenged practice caused the claiming party's injury. *Sunbelt Portfolios LLC v. Curtis*, 2019 Colo. Dist. LEXIS 4723, *4 (Jun. 25, 2019).

81.     Defendant engaged in deception unfair business acts, false advertising, and misrepresentation by selling Amazon Prime subscriptions based on false and misleading information offering a commercial-free experience. Defendant's advertisements for commercial-free content contained demonstrably untrue and misleading statements regarding the benefits of a Prime subscription, specifically the inclusion of commercial-free content on Prime Video. These actions constitute unfair or deceptive trade practices under CCPA.

82.     In addition, Defendant's unilateral addition of mandatory commercials and the unilateral imposition of a new $2.99 monthly fee to maintain the commercial-free experience was an unfair and deceptive trade practice. These changes alter the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

83.     Defendant engaged in these unfair and deceptive trade practices in the course of Defendant's business, which, among other things, involves the marketing and sale of digital products and services including the Amazon Prime streaming service that is the subject of this action.

84.     Defendant's unfair and deceptive trade practices, as alleged herein, resulted in significant harm to Plaintiff Peterson and the Colorado Subclass and impacts the public as well as thousands, if not millions, of current actual customers of Defendant.

85.     Defendant engaged in deceptive marketing that caused consumers like Plaintiff Peterson and the Colorado Subclass to rely on the marketing when enrolling and reenrolling in their annual Prime memberships. Defendant's advertisements promoting their Prime services falsely promised commercial-free access to television programs and movies on Prime Video. These representations were demonstrably inaccurate and constituted a material misrepresentation of the service's features.

86.     Plaintiff Peterson and the Colorado Subclass suffered concrete injury in fact, measurable as (a) overpayment for services due to the inflated price caused by the misrepresentation, and (b) failure to receive the promised commercial-free experience, resulting in a service with a lower market value than what was promised.

87.     Plaintiff and the Colorado Subclass suffered damages in the amount of $2.99 per month as a result of the foregoing conduct.  Plaintiff and the Colorado Subclass are entitled to actual damages, attorneys' fees and costs of suit, injunctive relief and all available relief.

### COUNT FIVE
### VIOLATION OF HAWAII'S UNFAIR OR DECEPTIVE ACTS OR PRACTICES LAW ("UDAP"), Haw. Rev. Stat. §§ 480-1 et *seq*.
### (Plaintiff Ashley Scarborough on behalf of herself and the Hawaii Subclass)

88.     Plaintiff Ashley Scarborough incorporates repeats and realleges each and every allegation contained in paragraphs 1–87 as if fully set forth herein.

89.     Plaintiff Scarborough brings this cause of action on behalf of herself and the members of the Hawaii Subclass.

90.     Upon subscribing and renewing her Prime membership each year, Plaintiff Scarborough reasonably believed the subscription fees covered unlimited, commercial-free streaming of movies and TV shows. She fulfilled her contractual obligation by paying the annual subscription fee. However, after paying the subscription fee, additional monthly fees of $2.99 were required to access commercial-free content.

91.     Hawaii's unfair or deceptive acts or practices law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." HRS § 480-2. To prevail on a claim, a consumer must establish: "(1) a violation of HRS § 480-2; (2) injury to the consumer caused by such a violation; and (3) proof of the amount of damages." *Leong v. Honolulu Ford Inc.*, 150 Haw. 289, 500 P.3d 474 (2021). "A trade practice violates HRS § 480-2 when 'it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.*

92.     Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce by selling subscriptions based on false and misleading information offering a commercial-free experience. Defendant's advertisements for commercial-free content contained demonstrably untrue and misleading statements regarding the benefits of a Prime subscription, specifically the inclusion of commercial-free content on Prime Video. These actions constitute unfair or deceptive trade practices under Hawaii's UDAP law.

93.     In addition, Defendant's unilateral addition of mandatory commercials and the unilateral imposition of a new $2.99 monthly fee to maintain the commercial-free experience was an unfair and deceptive acts or practices in the conduct of trade or commerce. These changes alter the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

94.     Defendant's deceptive acts and practices, as alleged herein, resulted in significant harm to Plaintiff Scarborough and the Hawaii Subclass and impacts thousands of consumers throughout Hawaii and the country, and is therefore consumer oriented.

95.     The unilateral addition of mandatory advertisements and the unilateral imposition of a separate $2.99 monthly fee to maintain the commercial-free experience was deceptive and misleading. This change alters the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

96.     The unilateral addition of mandatory advertisement and the unilateral imposition of a separate $2.99 monthly fee to maintain the commercial-free experience impacts the public interest in that there is a public interest in protecting Hawaii consumers from unfair and deceptive commercial practices. This practice impacts thousands, if not millions of consumers throughout Hawaii and the country. Defendant's unlawful business practices are immoral, unethical, unconscionable, and/or substantially injurious to Plaintiff Scarborough and the members of the Hawaii Subclass, and the general public. Any countervailing benefits to consumers or competition did not outweigh this injury.   Defendant's conduct damaged Plaintiff Scarborough and the members of the Hawaii Subclass as they are collectively being extorted for an additional $2.99 per month for a service they have already contracted-for at an agreed-upon price.

97.     Plaintiff and the Hawaii Subclass suffered damages in the amount of $2.99 per month as a result of the foregoing conduct. Plaintiff and the Hawaii Subclass are entitled to actual and statutory damages, treble damages, attorneys' fees and costs of suit, injunctive relief, and all other available relief.

**COUNT SIX**
**VIOLATION OF IDAHO'S CONSUMER PROTECTION ACT ("ICPA"),**
**Idaho Code Ann §§ 48-603(1) *et seq.***
**(Plaintiff Daleene Fox on behalf of herself and the Idaho Subclass)**

98.     Plaintiff Daleene Fox incorporates repeats and realleges each and every allegation contained in paragraphs 1–97 as if fully set forth herein.

99.     Plaintiff Fox brings this cause of action on behalf of herself and the members of the Idaho Subclass.

100.    Upon subscribing and renewing her Prime membership each year, Plaintiff Fox reasonably believed the subscription fees covered unlimited, commercial-free streaming of movies and TV shows. She fulfilled her contractual obligation by paying the subscription fee. However, after paying the subscription fee, additional monthly fees of $2.99 were required to access commercial-free content.

101.    The ICPA "prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce within the State of Idaho[,]" and forbids "[e]ngaging in any act or practice that is otherwise misleading, false, or deceptive to the consumer[.]" I.C. §§ 48-618, 48-603(17); *Litster Frost Injury Laws., PLLC v. Idaho Injury Law Group, PLLC*, 518 P.3d 1, 11 (Idaho Sept. 2, 2022).

102.    Under the ICPA, a consumer must prove (1) he or she "purchased goods or services from a seller; (2) the seller engaged in unfair or deceptive act(s) or practice(s) . . . and (3) the unfair act(s) or practice(s) caused the consumer to suffer an 'ascertainable loss of money or property' (real or personal)." *Litster Frost*, 518 P.3d at 11 citing I.C. § 48-608(1).

103.    "If a consumer proves all three elements, he or she . . . may treat any agreement incident to the unfair act(s) or practice(s) as 'voidable' (i.e., rescission); or (2) . . . recover his or

her actual damages — or $1,000 — whichever is greater. In addition to the elected remedy, a consumer may also seek restitution and injunctive relief." *Id.*

104.    The ICPA states that a person engaged in unfair or deceptive acts where the person knows or should know he has represented "that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "[a]dvertis[ed] goods or services with intent not to sell them as advertised;" of "[e]ngag[ed] in any act or practice that is otherwise misleading, false, or deceptive to the consumer[.]"

105.    Plaintiff Fox purchased goods and/or services from Defendant when she paid for her annual Amazon Prime subscription.

106.    Defendant is a seller that engaged in an unfair and deceptive act by selling Amazon Prime subscriptions based on false and misleading information. Defendant's advertisements for commercial-free contained demonstrably untrue and misleading statements regarding the benefits of a Prime subscription, specifically the inclusion of commercial-free content on Prime Video. These actions constitute unfair methods of competition and/or unfair or deceptive acts or practices under the ICPA.

107.    In addition, Defendant's unilateral addition of mandatory commercials and the unilateral imposition of a new $2.99 monthly fee to maintain the commercial-free experience was an unfair and deceptive acts or practices in the conduct of trade or commerce. These changes alter the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

108.    Defendant's deceptive acts and practices, as alleged herein, resulted in significant harm to Plaintiff Fox and the Idaho Subclass and impacts thousands, if not millions, of consumers throughout Idaho and the country, and is therefore consumer oriented.

109.    The unilateral addition of mandatory advertisements and the unilateral imposition of a separate $2.99 monthly fee to maintain the commercial-free experience was deceptive and misleading. This change alters the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

110.    Plaintiff and the Idaho Subclass suffered an ascertainable loss in the amount of $2.99 per month as a result of the foregoing conduct. Plaintiff and the Idaho Subclass are entitled to actual and/or statutory damages, punitive damages, attorneys' fees and costs of suit, and all other available relief.

## COUNT SEVEN
### VIOLATION OF ILLINOIS' CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT("ICFA"), 815 Ill. Comp. Stat. ("ILCS") 505/1, *et seq.* (Plaintiff Porsche Holmes on behalf of herself and the Illinois Subclass)

111.    Plaintiff Porsche Holmes incorporates repeats and realleges each and every allegation contained in paragraphs 1–110 as if fully set forth herein.

112.    Plaintiff Holmes brings this cause of action on behalf of herself and the members of the Illinois Subclass.

113.    Upon subscribing and renewing her Prime membership each year, Plaintiff Holmes and the Illinois Subclass reasonably believed the subscription fees covered unlimited, ad-free streaming of movies and TV shows. She fulfilled her contractual obligation by paying the subscription fee. However, after paying the fee, additional monthly fees of $2.99 were required to access ad-free content.

114.    Plaintiff Holmes and the Illinois Subclass members are persons within the context of the ICFA, 815 ILCS § 505/1(c), and Defendant is a person within the context of the ICFA, 815 ILCS § 505/1(c).

115.    At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS § 505/1(f). Plaintiff Holmes and the proposed Illinois Subclass are "consumers" within the meaning of the ICFA, 815 ILCS § 505/1(e).

116.    The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce . . . ." ICFA, 815 ILCS § 505/2. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act. 815 ILCS § 505/2. This includes conduct that "creates a likelihood of confusion or misunderstanding" irrespective of whether the person has been in fact misled, deceived, or damaged thereby. 815 ILCS § 505/2; 815 ILCS § 510/2(a)(12).

117.    Defendant engaged and continues to engage in deception unfair business acts, false advertising, and misrepresentation by selling Amazon Prime subscriptions based on false and misleading information offering a commercial-free experience. Defendant's advertisements for commercial-free content contained demonstrably untrue and misleading statements regarding the benefits of a Prime subscription, specifically the inclusion of commercial-free content on Prime Video. These actions constitute unfair methods of competition and/or unfair or deceptive acts or practices under the ICFA.

118.    Defendant's misrepresentations, as alleged herein, resulted in significant harm to Plaintiff Holmes and the Illinois Subclass. They were told they did not need to pay extra for ad-free service and were induced to pay for Amazon Prime, a service that did not deliver the advertised benefits, which violated their legitimate expectation of receiving the full value of their

subscription, as promised by Defendant. Furthermore, Defendant's conduct offers no public benefit. There is no justification for misrepresenting the features of a service.

119.    The harm suffered by Plaintiff Holmes and the Illinois Subclass is not offset by any countervailing advantages for consumers or competition aside from increasing Defendant's bottom line by inducing customers to pay for a service they thought they had already paid for. In fact, such deceptive practices undermine healthy competition and ultimately disadvantage consumers.

120.    Defendant engaged in deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3). Consumers like Plaintiff Holmes and the Illinois Subclass to relied on the marketing when enrolling and reenrolling in their Prime memberships. Defendant's advertisements promoting their Prime services falsely promised ad-free access to television programs and movies on Prime Video. These representations were demonstrably inaccurate and constituted a material misrepresentation of the service's features.

121.    Defendant violated the ICFA by representing that its Amazon Prime Video service had characteristics or benefits that it would not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

122.    Defendant advertised its Amazon Prime Video service with the intent not to sell it as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

123.    Defendant's misleading advertisements led to consumer deception. The misleading nature of Defendant's statements was likely to deceive, and in fact did deceive, Plaintiff Holmes and the Illinois Subclass, which is composed of reasonable consumers that were likewise induced by the misleading advertisements. Reasonable consumers, exercising ordinary care, would and did rely on such representations when making a purchasing decision. Defendant either knew or should

have known through the exercise of reasonable care that their statements regarding an ad-free service were inaccurate and misleading.

124.   Defendant intended to lure consumers like Plaintiff Holmes and the Illinois Subclass to rely on its misleading statements advertising Prime services and then nickel-and-dime them into paying more. These misrepresentations played a crucial role in influencing Plaintiff's decision to purchase the service, as they created a false impression of the quality and benefits of Prime services.

125.   The addition of mandatory advertisements and introduction of a separate $2.99 monthly fee to maintain the ad-free experience was deceptive and misleading. This change alters the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier. The pervasiveness of Defendant's misleading advertisements justifies an inference of Subclass-wide reliance and, given the materiality of the misrepresentations, it can be reasonably presumed that other Subclass members were similarly deceived.

126.   Defendant's representations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or cause Plaintiff and the other Illinois Class and Sub-class members to be deceived about the true nature of the Noticed Products.

127.   Plaintiff and Subclass Members have been damaged as a proximate result of Defendant's violations of the ICFA. They have suffered damages as a direct and proximate result of purchasing Amazon Prime.

128.   As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Illinois Sub-class members have suffered ascertainable losses of money

caused by Defendant's representations and material omissions regarding the nature and cost of Amazon Prime, specifically related to its ad-free service.

129.    Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Subclass members are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS § 505/10a. Plaintiff and Illinois Subclass members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

**COUNT EIGHT**
**VIOLATION OF KANSAS' CONSUMER PROTECTION ACT ("KCPA"),**
**Kan. Stat. Ann. §§ 50-263 *et seq.***
**(Plaintiff Laura Smith on behalf of herself and the Kansas Subclass)**

130.    Plaintiff Laura Smith incorporates repeats and realleges each and every allegation contained in paragraphs 1–129 as if fully set forth herein.

131.    Plaintiff Smith brings this cause of action on behalf of herself and the members of the Kansas Subclass.

132.    Upon subscribing and renewing her Prime membership each year, Plaintiff Smith reasonably believed the annual subscription fees covered unlimited, commercial-free streaming of movies and TV shows. She fulfilled her contractual obligation by paying the subscription fee. However, after paying the subscription fee, additional monthly fees of $2.99 were required to access commercial-free content.

133.    To prevail on a KCPA claim, a plaintiff must prove: "(1) plaintiffs were consumers under the KCPA, (2) defendants were suppliers under the KCPA, (3) defendants engaged in a deceptive or unconscionable act or practice in violation of K.S.A. § 50-626 . . . or K.S.A. § 50-627, and (4) plaintiffs were 'aggrieved' by such act." *Holmes v. Pistotnik*, 58 Kan. App. 2d 501,

506 (2020). To be "aggrieved" a consumer must "suffer[] legal harm, even if he or she fails to discover or recognize the harm." *Id.* (citing *Florez v. Ginsberg*, 57 Kan. App. 2d 207, 216 (2019)).

134.     Plaintiff Smith is a consumer under the meaning of K.S.A. §50-624 because she is an individual seeking services for personal purposes. Defendant is a supplier under the KSA because it is a seller that provides goods and services to consumers in the regular course of business.

135.      Defendant engaged in an engaged in a deceptive or unconscionable act or practice by selling Amazon Prime subscriptions based on false and misleading information. Defendant's advertisements for commercial-free contained demonstrably untrue and misleading statements regarding the benefits of a Prime subscription, specifically the inclusion of commercial-free content on Prime Video. These actions constitute unfair methods of competition and/or unfair or deceptive acts or practices under the KCPA.

136.     In addition, Defendant's unilateral addition of mandatory commercials and the unilateral imposition of a new $2.99 monthly fee to maintain the commercial-free experience was an unfair and deceptive acts or practices in the conduct of trade or commerce. These changes alter the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

137.     Defendant's deceptive acts and practices, as alleged herein, resulted in significant harm to Plaintiff Smith and the Kansas Subclass and impacts thousands of consumers throughout Kansas and the country, and is therefore consumer oriented.

138.     The unilateral addition of mandatory advertisements and the unilateral imposition of a separate $2.99 monthly fee to maintain the commercial-free experience was deceptive and

misleading. This change alters the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

139.    Plaintiff Smith and the Kansas subclass were aggrieved under the meaning of the KCPA in that they each suffered a legal harm, which caused monetary damage.

140.    Plaintiff and the Kansas Subclass suffered an ascertainable loss in the amount of $2.99 per month as a result of the foregoing conduct. Plaintiff and the Kansas Subclass are entitled to actual and/or statutory damages, punitive damages, attorneys' fees and costs of suit, and all other available relief.

## COUNT NINE
## VIOLATION OF MISSOURI'S MERCHANDISING PRACTICES ACT ("MMPA"), Mo. Rev. Stat. §§ 407.010 *et seq.*
### (Plaintiff Sharon Crosswhite on behalf of herself and the Missouri Subclass)

141.    Plaintiff Sharon Crosswhite incorporates repeats and realleges each and every allegation contained in paragraphs 1–140 as if fully set forth herein.

142.    Plaintiff Crosswhite brings this cause of action on behalf of herself and the members of the Missouri Subclass.

143.    Upon subscribing and renewing her Prime membership each year, Plaintiff Crosswhite reasonably believed the annual subscription fees covered unlimited, commercial-free streaming of movies and TV shows. She fulfilled her contractual obligation by paying the subscription fee. However, after paying the subscription fee, additional monthly fees of $2.99 were required to access commercial-free content.

144.    "To prevail on a claim under the MMPA, a plaintiff must plead and prove he or she (1) purchased merchandise (which includes services) from defendants; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of

30

an act declared unlawful under the Merchandising Practices Act." *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. App. 2016)

145.    Plaintiff Crosswhite purchased merchandise because she was paid her annual subscription fee for Amazon Prime for her personal use.

146.    Defendant engaged in an engaged in a deceptive or unconscionable act or practice by selling Amazon Prime subscriptions based on false and misleading information. Defendant's advertisements for commercial-free contained demonstrably untrue and misleading statements regarding the benefits of a Prime subscription, specifically the inclusion of commercial-free content on Prime Video. These actions constitute unfair methods of competition and/or unfair or deceptive acts or practices under the MMPA.

147.    In addition, Defendant's unilateral addition of mandatory commercials and the unilateral imposition of a new $2.99 monthly fee to maintain the commercial-free experience was an unfair and deceptive acts or practices in the conduct of trade or commerce. These changes alter the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

148.    Defendant's deceptive acts and practices, as alleged herein, resulted in significant harm to Plaintiff Crosswhite and the Missouri Subclass and impacts thousands, if not millions, of consumers throughout Missouri and the country, and is therefore consumer oriented.

149.    The unilateral addition of mandatory advertisements and the unilateral imposition of a separate $2.99 monthly fee to maintain the commercial-free experience was deceptive and misleading. This change alters the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

150.    Plaintiff Crosswhite and members of the Missouri Subclass suffered an ascertainable loss in that they did not receive the ad-free content they paid for.

151.    Plaintiff and the Missouri Subclass suffered an ascertainable loss in the amount of $2.99 per month as a result of the foregoing conduct. Plaintiff and the Kansas Subclass are entitled to actual and/or statutory damages, punitive damages, attorneys' fees and costs of suit, and all other available relief.

**COUNT TEN**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT ("NJCFA"),**
**N.J.S.A. §§ 56:8-1 *et seq.***
**(Plaintiff Sarah Frazee on behalf of herself and the New Jersey Subclass)**

152.    Plaintiff Sarah Frazee incorporates repeats and realleges each and every allegation contained in paragraphs 1–151 as if fully set forth herein.

153.    Plaintiff Frazee brings this cause of action on behalf of herself and the members of the New Jersey Subclass.

154.    Upon subscribing and renewing her Prime membership each year, Plaintiff Frazee reasonably believed the subscription fees covered unlimited, ad-free streaming of movies and TV shows. She fulfilled her contractual obligation by paying the subscription fee. However, after paying the subscription fee, additional monthly fees of $2.99 were required to access ad-free content.

155.    Plaintiff Frazee is a "person" and a "consumer" pursuant to N.J.S.A. §56:8-1(d), as she and all members of the New Jersey Subclass are natural persons as defined therein. Defendant is a "person" pursuant to N.J.S.A. §56:8-1(d), as it is a business entity, corporation, or company as defined therein. Defendant engages in the sale of merchandise pursuant to N.J.S.A. §56:8-1(e).

156.    The NJCFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or

omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice;. . . ." N.J.S.A. § 56:8-2.

157.    To state a claim under the NJCFA, a plaintiff must allege: (1) unlawful conduct by Defendant; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 85 A.3d 947, 960 (N.J. 2014) (quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 964 A.2d 741, 749 (N.J. 2009)).

158.    Defendant engaged and continues to engage in unconscionable commercial conduct, deception, fraud, false promise, and misrepresentation in violation of the NJCFA by selling Amazon Prime subscriptions based on false and misleading information offering a commercial-free experience. Defendant's advertisements for commercial-free content contained demonstrably untrue and misleading statements regarding the benefits of a Prime subscription, specifically the inclusion of exclusively commercial- free content on Prime Video. These actions constitute unconscionable commercial practices, and are unfair and deceptive acts and practices under the NJCFA.

159.    Specifically, Defendant represented to Plaintiff Frazee and the New Jersey Subclass that they did not — and would not — need to pay extra for commercial-free service through Amazon Prime for the term of their annual contracts, but that was not true.

160.    Defendant's unilateral introduction of mandatory commercials and unilateral imposition of a new $2.99 monthly fee to maintain the commercial-free experience was

unconscionable. These changes alter the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

161.    As a direct and proximate result of Defendant's unconscionable business practices specified above, Plaintiff Frazee and the New Jersey Subclass suffered ascertainable losses, including but not limited to $2.99 per month that they have been overcharged for commercial-free service, or $2.99 per month, which is the difference in value between the commercial-free service which they contracted for and the service that they now have.

**COUNT ELEVEN**
**VIOLATION OF OHIO'S CONSUMER SALES PRACTICES ACT ("CSPA"),**
**Ohio Rev. Code Ann. §§ 1345.01–13 *et seq*.**
**(Plaintiff Kelly Slovenkay on behalf of herself and the Ohio Subclass)**

162.    Plaintiff Kelly Slovenkay incorporates repeats and realleges each and every allegation contained in paragraphs 1–161 as if fully set forth herein.

163.    Plaintiff Slovenkay brings this cause of action on behalf of herself and the members of the Ohio Subclass.

164.    Upon subscribing and renewing her Prime membership each year, Plaintiff Slovenkay reasonably believed the annual subscription fees covered unlimited, commercial-free streaming of movies and TV shows. She fulfilled her contractual obligation by paying the subscription fee. However, after paying the subscription fee, additional monthly fees of $2.99 were required to access ad-free content.

165.    The Ohio CSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02(A). "Supplier" means "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions." R.C. 1345.01(A)(C).

166.    The CSPA is meant to protect consumers from harmful, deceptive or unconscionable sales practices. The CSPA "defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving," and "unconscionable acts or practices" as those "relat[ing] to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 2005-Ohio-4985, 106 Ohio St. 3d 278, 287 (Oct. 5, 2005).

167.    Defendant is a "supplier" as defined by the CSPA, in that it sells goods and services to consumers in its regular course of business.  Defendant engaged in and continues to engage in trade or commerce within the meaning of the CSPA.

168.    The CSPA states that a "Supplier" engages in a deceptive act if the "Supplier" has presented "the subject of a consumer transaction [as being] of a particular standard, quality, grade, style, prescription, or model, if it is not." R.C. § 1345.02(B)(2).

169.    Defendant engaged in an engaged in a deceptive or unconscionable act or practice by selling Amazon Prime subscriptions based on false and misleading information. Defendant's advertisements for commercial-free contained demonstrably untrue and misleading statements regarding the benefits of a Prime subscription, specifically the inclusion of commercial-free content on Prime Video. These actions constitute unconscionable acts and practices under the CSPA.

170.    In addition, Defendant's unilateral addition of mandatory commercials and the unilateral imposition of a new $2.99 monthly fee to maintain the commercial-free experience was an unfair and deceptive acts or practices in the conduct of trade or commerce. These changes alter the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

171.     Defendant's unconscionable acts and practices, as alleged herein, resulted in significant harm to Plaintiff Slovenkay and the Ohio Subclass and impacts thousands, if not millions, of consumers throughout Ohio and the country, and is therefore consumer oriented.

172.     The unilateral addition of mandatory advertisements and the unilateral imposition of a separate $2.99 monthly fee to maintain the commercial-free experience was unconscionable, unfair and deceptive. This change alters the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

173.     Plaintiff and the Ohio Subclass suffered damages in the amount of $2.99 per month as a result of the foregoing conduct. Plaintiff and the Ohio Subclass are entitled to actual economic damages and/or statutory damages, injunctive relief, attorneys' fees and costs of suit, and all other available relief.

## COUNT TWELVE
### VIOLATION OF UTAH'S CONSUMER SALES PRACTICES ACT ("UCSPA"),
### Utah Code Ann. §§ 13-11-1 et *seq*.
### (Plaintiff Oliver Tsuya on behalf of himself and the Utah Subclass)

174.     Plaintiff Oliver Tsuya incorporates repeats and realleges each and every allegation contained in paragraphs 1–173 as if fully set forth herein.

175.     Plaintiff Tsuya brings this cause of action on behalf of himself and the members of the Utah Subclass.

176.     Upon subscribing and renewing his Prime membership each year, Plaintiff Tsuya reasonably believed the annual subscription fees covered unlimited, commercial-free streaming of movies and TV shows. He fulfilled his contractual obligation by paying the subscription fee. However, after paying the subscription fee, additional monthly fees of $2.99 were required to access commercial-free content.

177.     To establish a UCSPA claim, a plaintiff must prove five elements: (1) an unfair or deceptive act or practice that (2) affects trade or commerce and (3) impacts the public interest, and (4) the plaintiff sustained damage to business or property that was (5) caused by the unfair or deceptive act or practice. *Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 349–50 (2019).

178.     Defendant engaged in an engaged in unfair and deceptive acts or practices by selling Amazon Prime subscriptions based on false and misleading information. Defendant's advertisements for commercial-free contained demonstrably untrue and misleading statements regarding the benefits of a Prime subscription, specifically the inclusion of commercial-free content on Prime Video. These actions constitute unfair and deceptive acts and practices under the UCSPA.

179.     In addition, Defendant's unilateral addition of mandatory commercials and the unilateral imposition of a new $2.99 monthly fee to maintain the commercial-free experience was an unfair and deceptive acts or practices in the conduct of trade or commerce. These changes alter the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

180.     Defendant's unfair and deceptive acts and practices, as alleged herein, affect trade and commerce and impacts the public interest, by causing significant harm to Plaintiff Tsuya and the Utah Subclass as well as thousands, if not millions, of consumers throughout Utah and the country.

181.     The unilateral addition of mandatory advertisements and the unilateral imposition of a separate $2.99 monthly fee to maintain the commercial-free experience was unfair and deceptive. This change alters the core service that existing subscribers originally agreed to pay for, forcing them to pay extra to receive the same benefit they were promised earlier.

182.    Plaintiff and the Utah Subclass suffered an ascertainable loss in the amount of $2.99 per month as a result of the foregoing conduct. Plaintiff and the Utah Subclass are entitled to actual damages, attorneys' fees and costs of suit, and all other available relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated members of the Class and Subclasses, respectfully requests that the Court enter judgment against Defendant in the form of an Order:

A.    Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Nationwide Classes and Plaintiffs' undersigned attorneys as Class Counsel to represent the Class and Subclass Members;

B.    Naming Plaintiff Timothy Peterson as the representative of the Colorado Subclass;

C.    Naming Plaintiff Ashley Scarborough as representative of the Hawaii Subclass;

D.    Naming Plaintiff Daleene Fox as the representative of the Idaho Subclass;

E.    Naming Plaintiff Porsche Holmes as the representative of the Illinois Subclass;

F.    Naming Plaintiff Laura Smith as the representative of the Kansas Subclass;

G.    Naming Plaintiff Sharon Crosswhite as the representative of the Missouri Subclass;

H.    Naming Plaintiff Sarah Frazee as the representative of the New Jersey Subclass;

I.    Naming Plaintiff Kelly Slovenkay as the representative of the Ohio Subclass;

J.    Naming Plaintiff Oliver Tsuya as the representative of the Utah Subclass;

K.    Declaring that Defendant's conduct violated the laws referenced herein;

L.    Finding in favor of Plaintiffs and the Class and Subclasses on all counts asserted herein;

M.    Awarding actual, consequential, punitive, statutory, and treble damages;

N.    Awarding applicable prejudgment and post-judgment interest;

O.    For injunctive relief as pleaded or as the Court may deem proper;

P.      For disgorgement and restitution to Plaintiffs and the Class and/or Subclass members of all monies received or collected from Plaintiffs, the Class, and the Subclass members and all other forms of equitable relief;

Q.      Awarding Plaintiffs and the Class and Subclasses' reasonable attorneys' fees and expenses and costs of suit;

R.      For such other and further relief as the Court may deem proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs hereby demand trial by jury as to all triable issues.


Dated: March 18, 2024                   Respectfully submitted,


By: */s/ David B. Richardson*

David B. Richardson
WSBA No. 21991
**LAW OFFICES OF DAVID B. RICHARDSON, P.S.**
3829 S. Edmunds St., Suite C.
Seattle, WA 98118
Email: david@dbrlaw.com
425-646-9801

**SIRI & GLIMSTAD LLP**
David J. DiSabato (*Pro Hac Vice to be filed*)
Lisa R. Considine (*Pro Hac Vice* to be filed)
Oren Faircloth (*Pro Hac Vice to be filed*)
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: lconsidine@sirillp.com
Email: ddisabato@sirillp.com
Email: ofaircloth@sirillp.com

*Attorneys for Plaintiffs and the Proposed Class and Subclasses*